IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNSON OUTDOORS INC. and JOHNSON OUTDOORS MARINE ELECTRONICS, INC. | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| NAVICO, INC. | ) ) |
| Defendant. | ) ) ) |

Case No. 2:10-CV-67-WKW-CSC

**DEFENDANT NAVICO, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE CERTAIN DEFENSES AND
<u>COUNTERCLAIMS, AND TO DISMISS THEM WITH PREJUDICE</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>:

I.   INTRODUCTION ...........................................................................................1

    A.   The Duty of Candor and Good Faith ................................................1

    B.   The Pleadings Are Taken as True for This Motion ...........................2

II.  STATEMENT OF FACTS ............................................................................3

    A.   The Patent Examiner, and JOI, Made the "Towfish/Mounted to the Boat" Distinction a Key Issue Throughout Patent Prosecution .......................3

    B.   The Falsity of JOI's Statements Is Proven by Prior Art Disclosing that Towfish and Side Scan Sonar Could Be Mounted to a Boat ...........................8

III. ARGUMENT ...............................................................................................11

    A.   The "Who, What, When, Where and How" Requirements ...............11

    B.   Navico's Pleadings Regarding Johnson Outdoors' False Statements Satisfy the "Who, What, When, Where and How" Requirements..................12

        1.   Navico's Pleadings Satisfy the "Who" Requirement..........................12
        2.   Navico's Pleadings Satisfy the "What" Requirement.......................13
        3.   Navico's Pleadings Satisfy the "When" Requirement.......................14
        4.   Navico's Pleadings Satisfy the "Where" Requirement......................15
        5.   Navico's Pleadings Satisfy the "Why" and "How" Requirements ........................................................................15
        6.   Navico's Pleadings Establish "Scienter" ...........................19
            a.   The Pleadings Establish JOI's Representative Had "Knowledge"......................................................19
            b.   The Pleadings Establish JOI's Representatives Had "Intent to Deceive" ................................................20

    C.   JOI Fails to Establish that Navico's Withholding Pleadings are Insufficient ...........................................................................21

        1.   Navico's Withholding Pleadings Satisfy the "What" and "Where" Requirements .........................................................21
        2.   Navico's Withholding Pleadings Properly Establish JOI's Representatives Knew of the Withheld References...........................22

    D.   JOI's Inequitable Conduct in the Prosecution of the '952 Patent Renders Unenforceable the '825, '203 and the '974 Patents...........................24

    E.   Navico's Pleadings Should Not be Dismissed with Prejudice .......24

IV.  CONCLUSION..............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                                              **Page(s):**

*Aerocrine AB v. Apieron Inc.*, No. 08-CV-787, 2010 WL 1225090 (D. Del. Mar. 30, 2010) ................................................................................................................20

*Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366 (Fed. Cir. 2006) ........................................24

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ...........................................................................25

*Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967 (Fed. Cir. 2010) ................................................................................................................................13

*Bayer Schering Pharma AG v. Barr Labs, Inc.*, 2008 U.S. Dist. LEXIS 15917 (D.N.J. Mar. 3 2008).................................................................................................17

*Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997).............25

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347 (Fed. Cir. 2007) ............................................................................... 21-22

*Correct Craft Holdings, LLC v. Malibu Boats, LLC*, No. 09-CV-813, 2010 WL 598693      (M.D. Fla. Feb. 17, 2010) ...........................................................11, 21

*eSpeed, Inc. v. BrokerTec USA LLC*, 480 F.3d 1129 (Fed. Cir. 2007) ........................17, 21

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) .................. *passim*

*Herengracht Group LLC v. W.M. Wrigley Jr. Co*, 10-CV-21784, Slip. Op. at 9 (S.D. Fla., Sept. 17, 2010) ......................................................................................23

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ................................................................25

*Intel Corp. v. VIA Tech., Inc.*, 176 F. Supp.2d 991 (N.D. Cal. 2001)..................................14

*Kenetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1427592 (M.D.N.C. April 8, 2010) .........................................................................................16

*Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Comp.*, No. 1:07-CV-265, 2010 WL 1781013 (N.D. Ind. May 3, 2010) ..........................................................................16

*Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007) .................................12, 18

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182 (Fed. Cir. 1993) .............21

*Reaux Med. Indus., LLC v. Stryker Corp.*, No. 3:09-CV-1582-M,  2010 WL 1507656 (N.D. Tex. Mar. 15, 2010) ............................................................................15

*Refact Int'l. Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996)..........................12, 18

*Scheur v. Rhodes*, 416 U.S. 232 (1974) ...............................................................................25

*Semiconductor Energy Lab. Co., LTD v. Samsung Elec. Co., LTD*, No. 09-CV-01-bbc, 2010 WL 55847 (W.D. Wis. Jan. 5, 2010) .............................................................24

LEGAL02/32248825v3

**Cases:**                                                                                  **Page(s):**

*Somentics Corp. v. CAS Med. Sys., Inc.*, No. 09-CV-13110, 2010 WL 2178836
   (E.D. Mich. May 26, 2010)..................................................................... *passim*

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478
   (3d Cir. 1998)...........................................................................................25

*Xechem Int'l, Inc. v. The Univ. of Texas M.D. Anderson Cancer Ctr.*, 382 F.3d
   1324 (Fed. Cir. 2004)............................................................................3, 18

*Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007)............................17


**Statutes:**

37 CFR § 1.56(a)....................................................................................1, 14

Fed. R. Civ. P. 9(b) ......................................................................... *passim*

LEGAL02/32248825v3

## I.  INTRODUCTION

Navico Inc. ("Navico") has pled that the four Johnson Outdoors patents in suit are invalid and unenforceable because Johnson Outdoors, Inc. ("JOI") made misrepresentations to the United States Patent Office and withheld information critical to the examination of its patent applications, violating the obligations of candor and good faith imposed on all patent applicants.  JOI's motion under Rule 9(b) to have these allegations stricken does not deny the actions and omissions, but merely denies their materiality.  Navico has plead in great detail *who* made false statements regarding the patents, *what* false statements were made, *where* and *when* the statements were made, and *how* and *why* they related to patentability.  The purpose of a motion to dismiss is not to test the merits of the pleading, but rather the sufficiency of its allegations, and Navico has more than satisfied the pleading requirements for sustaining these allegations of serious wrongdoing by JOI.  Accordingly, JOI's motion should be denied.

### A.     The Duty of Candor and Good Faith

The U.S. Patent and Trademark Office ("PTO") imposes an affirmative and well known obligation of candor and good faith on all persons involved in the prosecution of an application:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

37 CFR § 1.56(a)  (Full text attached as Def. Exh. 14).  "Information material to patentability" includes (1) prior art establishing unpatentability and (2) statements made opposing an argument of unpatentability.  *Id.* at 1.56(b).  This obligation is of such critical importance that it appears in every inventor's declaration.  JOI violated this duty

beginning with the first filing of the original patent application and continuing through prosecution to the very last amendment by submitting multiple false sworn statements to the PTO and withholding information highly material to the patent examination process.

The Patent Examiner ("Examiner") repeatedly rejected JOI's purported invention as not novel, stating that "towfish" side scan sonar systems were well known in the art. JOI distinguished its invention from such "towfish" side scan sonars by repeatedly stating that "towfish" side scan sonar could not be mounted to a boat, making the "towfish" vs. "mounted to a boat" dichotomy the focal point of the entire patent prosecution process. JOI went so far as to take the highly unusual step of submitting numerous sworn declarations to convince the Examiner just how important the "mounted to a boat" element was to its invention, and how "towfish" side scan sonar purportedly could not be mounted to a boat.

Sadly, JOI's statements regarding the "mounted" element were not true, because side scan sonar systems, including towfish side scan sonar, have been mounted to boats for over 20 years.  These false statements by JOI were no accident or mere oversight. The prior art, through pictures and words, clearly shows that one of ordinary skill in the art would know that towfish side scan sonar systems have been mounted to a boat, rendering the invention unpatentable.

**B.**     **The Pleadings Are Taken as True for This Motion**

JOI recognizes the difficulty in white-washing these false statements, and now resorts to a collateral attack minimizing the actions and omissions as immaterial.  This approach has no merit, and because this is a motion on the pleadings, Navico's pleadings are taken as true. *Xechem Int'l, Inc. v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 382

- 2 -

F.3d 1324, 1326 (Fed. Cir. 2004).  The only issue before this court is their sufficiency.

*Id.*  JOI's arguments regarding the falsity (Memorandum in support of Plaintiffs' Motion to Strike Certain Defenses and Counterclaims, and to Dismiss them with Prejudice, Doc. No. 53, ("Pls. Memo."), pp. 21-26) or immateriality (*Id.*, pp. 13-14) of the alleged statements are thus outside the pleadings and irrelevant.  Navico's Answer identifies ten specific instances where employees of JOI made false statements and identifies twelve prior art references that employees of JOI withheld from the PTO in violation of their duty.  Navico has clearly pled with particularity the who, what, where, when and how required to sustain each of these allegations.

## II.     STATEMENT OF FACTS

### A.     The Patent Examiner, and JOI, Made the "Towfish/Mounted to the Boat" Distinction a Key Issue Throughout Patent Prosecution

JOI's prosecution[1] of the application that led to the issuance of the '952 patent was highly unusual.  Over the course of many years JOI suffered two final rejections, submitted six amendments, and ultimately filed two additional continuation patent applications to keep the process alive until it finally convinced the Examiner to grant a patent.  Importantly, most of these rejections and amendments were directed at the limitation requiring the side scan sonar to be "mounted to the boat," but JOI's description of the prosecution history in its Memorandum conspicuously omits the sequences relating to this topic, and then dismisses it as immaterial.

---

[1] During a traditional patent prosecution, an applicant submits an application describing the invention and sets out claims defining the scope of the invention.  Once the application is filed it is reviewed by the Examiner, who conducts a prior art search in preparation for assessing whether there are any differences between the prior art and the claimed invention.  If the application has substantive problems, such as merely being an obvious variation over the prior art, the Examiner issues an Office Action rejecting the application and sets out the grounds for this rejection.  If the applicant wants to continue to pursue the application, he amends the application and/or presents arguments attempting to convince the Examiner the rejection was not proper.  This rejection and response process narrows the claims.

LEGAL02/32248825v3

JOI originally sought patent protection for side scan sonar "adapted to mount the transducer assembly to a watercraft." (Def. Exh. 1, pp. 17-19.)[2] The Examiner's first Office Action rejected all claims, citing multiple prior art references (Gilmore, Kosalos, and Deliginieras) all teaching the use of side scanning sonar. (Def. Exh. 2, pp. 2-3.)

In response, JOI attempted to distinguish the side scan references on the basis that they require the "use of a transducer in a submerged vessel towed by a watercraft (i.e. a 'tow fish')," explaining that towfish are separate from the boat and are towed by a flexible cable a fixed distance from the bottom of the ocean, rather than being mounted to the boat near the surface of the water. (Def. Exh. 3, pp. 9-11.) Thus, JOI's very first argument for patentability sought to distinguish towfish prior art on the basis that towfish are not mounted to a boat.

The Examiner did not find this argument persuasive, and in the next Office Action issued the first Final Rejection of all the JOI claims, stating: "applicant's attempt to paint a towfish and its concomitant sonar imaging system as shown by [towfish prior art references] as being of a different class than a watercraft sonar imaging system is not convincing." (Def. Exh. 4, p. 4.) Thus, the Examiner considered the "towfish/mounted to the boat" issue highly material to patentability, and JOI made this issue the focal point of its ongoing prosecution.

JOI's next step was an *ex parte* oral interview with the Examiner. No written amendment was submitted, but the Examiner's interview summary following this rejection stated: "it was argued by applicant [JOI] that the use of the imaging apparatus

---

[2] Because this is a motion to dismiss, the only issue before this Court is the sufficiency of Navico's pleadings. Thus, while Navico believes that the Court need not rely on Navico's exhibits or JOI's exhibits when ruling on this motion, but can and should decide this motion on the pleadings, these exhibits are provided for background information and to rebut statements made by JOI.

*attached to the boat* is what is considered new and unobvious." (Def. Exh. 5, (emphasis added).)  Sensing that it needed to separate side scan sonar on towfish from side scan sonar mounted to the boat, JOI filed a new application and submitted its false declarations.  Included in the chart below is a summary of some of the false statements made by JOI in these declarations.

| Statements JOI Made in its Declarations to Distinguish Side Scan Sonar from Towfish Based On "Mounted To a Watercraft" |
|---|
| "[T]he towfish is submerged at the end of a cable and *does not have a fixed position or a fixed orientation* with respect to the boat or its direction of travel." (Pls. Exh. 15, ¶ 12 (emphasis added).) |
| "The *towfish has an unknown position and orientation* with respect to the boat, in contrast to the Side Imaging technology described in the above-mentioned patent application and as implemented in Humminbird Side Imaging products." (Pls. Exh. 14, ¶ 28 (emphasis added).) |
| "Side scanning sonar systems, prior to our invention, made use of a towfish that carried side scanning sonar transducers. The *towfish was pulled behind a vessel* at a constant distance from the bottom." (Pls. Exh. 6, ¶ 12 (emphasis added).) |
| "Second, the use of a towfish precludes operation in shallow water, because the *towfish must run below the surface* of the water because it is premised on maintaining a constant distance from the bottom." (Pls. Exh. 6, ¶ 15 (emphasis added).) |
| "Sixth, a *towfish has a varying and unknown position* with respect to the boat." (Pls. Exh. 6, ¶ 19 (emphasis added).) |
| "The size of a towfish, which is many feet long, is *far too large to mount to a boat*. The transducer elements on towfish are typically far too large (too long) to be mounted on a practical level to a boat." (Pls. Exh. 6, ¶ 26 (emphasis added).) |
| "None of the companies making fishfinders or making towfish side scanning sonar have made a system in which a *boat-mounted transducer* includes side-scanning elements." (Pls. Exh. 6, ¶ 35 (emphasis added).) |

Each of these statements is false because towfish are indeed mounted to a boat, such that they have a known and fixed position and fixed orientation with respect to the boat and

its direction of travel.  Thus, towfish do not stay at a constant distance from the bottom, nor are towfish or their side scan sonar transducers too large to be mounted to a boat.

Compounding the damage flowing from these false statements, JOI submitted the following remarks emphasizing the alleged distinctions between side scan sonar mounted to a boat and side scan sonar on a towfish:

| **Statements JOI Made During Prosecution to Distinguish Side Scan Sonar from Towfish Based on "Mounted To a Watercraft"** |
|---|
| "Claims 1, 21, and 25 have been amended to clarify that the transducer is mounted on a watercraft adapted for travel on a surface of body of water (*as opposed to a submerged towed body or 'tow fish'*)." (Def. Exh. 3, p. 8 (emphasis added).) |
| "There are significant benefits to a *watercraft mounted side imaging system*, especially for fishermen. Until the present invention, however, these benefits have not been available, even though tow fish type systems have been used for many years." (Def. Exh. 3, pp. 10-11 (emphasis added).) |
| "The interview also included a discussion of the differences between towfish type side scanning sonar systems and the present invention, which uses a side scanning sonar transducer attached to the boat. This discussion continued into a discussion of the independent claims. The discussion focused, in particular, on the *attachment of the transducer assembly to the watercraft (boat)* in a *fixed position* with respect to the boat and with a *fixed orientation* with respect to the direction of travel of the boat." (Def. Exh. 6, p. 10 (emphasis added).) |
| "The towfish side scanning sonar systems are premised upon towing the transducers far behind the boat.  …The towfish side scanning sonar systems require that the towfish be maintained at a constant distance over the bottom, in order to achieve a desired image quality of the bottom. …The size and cost of towfish side scanning sonar systems were, and still are far beyond a price that could be charged for a boat mounted transducer used by anglers.  …The size and complexity of sonar elements used in traditional *towfish side scanning sonar systems are incompatible with a boat mounted sonar transducer*."  (Def. Exh. 6, pp. 11-12 (emphasis added).) |
| "In addition, the ability to search shallow water, which is a problem with towfish side scan sonar systems, is a significant *advantage of the boat-mounted side scanning transducer* of the present invention. With the Humminbird Side Imaging technology, the position of the transducer and the relationship of the orientation of the transducer to the direction of travel of the boat are fixed." (Def. Exh. 6, p. 13 (emphasis added).) |

In the office action that followed, the Examiner again rejected the claims based on the towfish prior art.  The Examiner stated that the main distinction between the alleged invention and the towfish prior art was that towfish were not mounted to a boat.  The Examiner further stated, however, that the claims as written did not capture this distinction, as the claims were not limited to transducers mounted to a boat, but were instead only directed to transducers adapted to be mounted to a boat:

> The crux of the arguments presented by applicants center around the prior art's use of side scanning sonars in towfish structures as opposed to applicants' use of side scanning sonars in a watercraft on a surface of a body of water.  However, as presently claimed in the independent claims the limitations to a water craft (towfish??) that travels on the surface of a body of water is an intended use limitation and provides no positive structural limitation to the claim.

(Pls. Exh. 3, p. 4.)  Regarding the declarations, the Examiner stated:

> The statements provided in the declarations are specific to the use of sides-scanning sonars on a watercraft that travels on a surface of a body of water.  However, this is not what is instantly claimed.  As instantly claimed, the side scanning sonars are 'for attaching to' a watercraft on the water's surface which is an intended use limitation.

(Pls. Exh. 3, p. 5.)

Following this rejection, JOI for the first time added the "mounted to the boat" limitation to address the examiner's concerns.  This amendment was made to "positively recite that the housing of the transducer assembly is attached to the watercraft, rather than merely that it has mounting members 'for attaching' to a watercraft."  (Def. Exh. 7, p. 8.)  Not relenting, however, the Examiner issued a second Final Rejection and again rejected JOI's arguments relying on towfish having side scan elements.  (Def. Exh. 8.)

Suffering its second Final Rejection, JOI again abandoned the application and surrendered all prior claims, essentially starting over again. The Examiner still refused to allow the application without the "mounted to the boat" limitation, mandating that all the independent claims include the "mounted to a boat" restriction, and do so without qualifiers that make it permissible rather than mandatory. (Def. Exh. 9.)

In short, contrary to JOI's statements in its Memorandum, the "mounted to the boat" limitation is not immaterial; instead, it was *the* key limitation at the heart of the prosecution of the patent. It was the focal point of the Examiner's rejections, the false declarations, and JOI's amendments, and it persisted until the very last amendment was made on December 7, 2009, only seven weeks before the '952 patent issued.

**B.  The Falsity of JOI's Statements Is Proven by Prior Art Disclosing <u>that Towfish and Side Scan Sonar Could Be Mounted to a Boat</u>**

At the time JOI made the statements above, it was known that side scan sonar and towfish could be mounted to a boat. JOI's memorandum admits as much, stating "boat-mounted side scan sonar transducer assemblies were well known in the art." (Pls. Memo, p. 14.) Nevertheless, JOI failed to disclose this prior art to the Examiner. Below is a brief overview of just some of the prior art JOI failed to cite. These references clearly demonstrate the falsity of the statements made by JOI, because each shows side scan sonar (including towfish) mounted to a boat:



Sidescan sonars can also be mounted to their support platforms (as a hull-mounted or bow-mounted (see Figure 8). Such a configuration has the major advantage of accurate position information for any objects, as the exact location of the sonar is known. Bow or hull-mounted sonars have the disadvantage that the backscatter detail that can be resolved in the across track direction of a waterfall display is lower that is resolvable when a sonar is towed and because of this they are normally only used in shallow areas.

Bow-mounted side-scan sonar

*Figure 8 An example of a sidescan sonar mounted to the bow of the survey platform. The sonar in this picture was the Klein 5500.*

(Pls. Exh. 10, p. 10 (color copy attached as Def. Exh. 12, pp. 1-10, 21).)



120 KhZ Sidescan

Sidescan transducer with narrow longitudinal and wide transverse beam may be over the side or hull mounted.

200 KhZ Sidescan

Sidescan transducer with narrow longitudinal and wide transverse beam may be over the side or hull mounted.

(Pls. Exh. 11, p. 2 (color copy attached as Def. Exh. 13.)

- 9 -



(Def. Exh. 10, pp. 1, 2.)

**SYSTEM INSTALLATION ABOARD R/V ITALICA**

Rikk Kvitek, Pat Iampietro, Kate Thomas and Erica Summers, of the CSUMB Seafloor Mapping Lab, arrived at TNB from McMurdo on January 29, 2004 in advance of the arrival of the *R/V Italica* scheduled for January 31. February 1 - 3 was spent installing the following acoustic mapping systems aboard the *R/V Ice Bjorn*:

- Reson 8101 multibeam sonar with sidescan option on a fixed hull mount bolted to a horizontal "I" beam below the waterline of the vessel's bow.
- Isis Sonar data acquisition system
- Hypack Max for survey planning and navigation
- Trimble UHF radio and modem for receiving DGPS corrections from a mobile basestation to be placed at each survey location.
- TSS POS/MV for vessel motion correction and positioning
- SVPlus for sound velocity profiling

Hull-mounted side-scan sonar

(Def. Exh. 11, p. 2.)

These refrneces plainly and decisively establish that towfish and side scan sonar have known positions and orientations with respect to the boat, are short enough to mount to a boat, have transducer elements small (short) enough to mount to a boat, are made by companies that offer boat mounted transducers and towfish, and are not always

submerged at the end of a cable.  This contradicts and establishes the falsity of the JOI

declarations.

## III.    ARGUMENT

### A.    The "Who, What, When, Where and How" Requirements

Under Rule 9(b), Navico is required to assert "with particularity the circumstances

constituting the fraud," but the scienter requirement may be "alleged generally."[3]  The

Federal Circuit has further defined this standard as applied to inequitable conduct

pleadings and holds that in order to properly allege the "circumstances" in accordance

with Rule 9(b), the pleadings must specify the "who, what, when, where and how of the

material misrepresentations or omission committed before the PTO."  *Exergen Corp. v.*

*Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).  Additionally, the Court

held that the scienter requirement must be alleged with sufficient facts from which "a

court can reasonably infer that a specific individual (1) knew of the false information and

(2) withheld or misrepresented this information."  *Id.* at 1328-29.

Subsequent courts have further clarified the rule announced in *Exergen*.  In

*Somentics Corp. v. CAS Med. Sys.*, the court using the "who, what, when, where and

how" test upheld a pleading of inequitable conduct because it properly alleged who made

the false declaration and what false statements were made.  No. 09-CV-13110, 2010 WL

2178836, at * 8 (E.D. Mich. May 26, 2010); *see also Correct Craft IP Holdings, LLC v.*

*Malibu Boats, LLC*, No. 09-CV-813, 2010 WL 598693, *6 (M.D. Fla. Feb. 17, 2010)

(holding misrepresentation pleadings sufficient under the *Exergen* standard, where the

---

[3] Because the legal standard is the same for both the affirmative defenses and counterclaims, and the language of the pleadings are essentially identical, these two pleadings are discussed jointly, and paragraph citations are provided for only the affirmative defense claim.

pleadings stated "who" made the statements and alleged sufficient facts from which the

court could infer that the declarants knew their statements were false).  Importantly, the

court in *Somentics* reiterated that the submission of false declarations is "inherently

material to the patent prosecution process," and *Exergen* did not change this rule.  *See*

*Somentics*, 2010 WL 2178836, at *8 (citing *Refact Int'l. Ltd. v. Lotus Dev. Corp.*, 81 F.3d

1576, 1583 (Fed. Cir. 1996), and *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233

(Fed. Cir. 2007)).

> **B.    Navico's Pleadings Regarding Johnson Outdoors' False Statements
> Satisfy the "Who, What, When, Where and How" Requirements**

Navico's pleadings set forth eleven separate instances of inequitable conduct in

connection with the prosecution of U.S. Patent No. 7,652,952 ("the '952 patent").  Three

of these acts are the result of JOI submitting false declarations.  Three more of these acts

are JOI falsely characterizing the prior art in the background section of the patent.  The

final five acts are JOI intentionally withholding prior art references that directly

contradict the statements in the false declarations.  Each of these acts of inequitable

conduct is alleged in detail and meets the "who, what, when, where and how"

requirements of *Exergen*.

> **1.    Navico's Pleadings Satisfy the "Who" Requirement**

*Exergen* requires that the pleading name the specific individuals.  *Exergen*, 575

F.3d at 1329.  Navico's pleadings identify Messrs. Betts, Derrow and Howells as the

individuals responsible for falsely describing the prior art in the background section of

the patent application.  (Answer, ¶ 62.)  Additionally, Messrs. Gibson, Betts and Davison

are identified as the individuals who submitted false declarations.  (Answer, ¶ 66.)

Finally, Messrs. Betts, Gibson, Davison, Derrow and Howells are identified as the

individuals who withheld material prior art from the Examiner.  (Answer, ¶ 70.)  All of these individuals had a duty of candor and good faith before the PTO either as inventor or due to their participation in the prosecution process.  *Avid Identification Sys., Inc. v. Crystal Import Corp.*, 603 F.3d 967, 973 (Fed. Cir. 2010).  Thus Navico's pleadings satisfy the "who" requirement for all allegations.  *Exergen*, 575 F.3d at 1329, *Somentics*, 2010 WL 2178836, at *6.

## 2.    Navico's Pleadings Satisfy the "What" Requirement

Navico's Answer clearly sets out "what" patents, patent claims and claim limitations are at issue, identifying all independent claims of all four patents in suit:

> The '874, '203, and '974 Patents are all related to the '952 Patent.  The '952, '874, '203, and '974 Patents all arise from a single provisional application and the same utility application, share a common specification, and are expressly identified as related applications.  All four patents have multiple claims reciting the same subject matter – a side scan sonar system or side scan sonar transducers "mounted to a boat," and down scan transducers, all of which were the subject of the material misrepresentations made to and material prior art information withheld from the USPTO as detailed above.  See, for example, for the '952 Patent, Claims 1, 3, 8, 9; for the '825 Patent, Claims 1, 5, 13, 16, 18; for the '203 Patent, Claims 1, 4, 9, 22, 28; for the '974 Patent, Claims 1, 4, 14, 17, 26.  This includes all independent claims of all four patents.

(Answer, ¶ 71.)  Navico's pleading also identifies the specific claim language:

> The claims of the purported JOI invention recited, at various times, a side scan transducer assembly "adapted to mount…to a watercraft," or "for attaching…to a watercraft," or "mounted to a watercraft," or "adapted to be mounted to a surface watercraft."  These statements and amendments to the claims were made to persuade the Patent Examiner that sonar imaging systems on watercraft are patentably distinct from those on towfish.

(Answer, ¶ 63.)  These statements make clear that the misrepresentations and omissions about towfish addressed in the pleadings are directed at the "mounted to a boat" limitation.  Thus, Navico's pleadings satisfy the "what" requirement.  *Exergen*, 575 F.3d at 1329.

3.    **Navico's Pleadings Satisfy the "When" Requirement**

*Exergen* requires that the pleading state when the misrepresentation or withholding occurred.  *Exergen*, 575 F.3d at 1327.  For each of Navico's allegations, the pleadings clearly set out "when" the reference was first published and/or "when" the material misrepresentations where made.  (Answer, ¶¶ 62, 66, 68 and 70.)  For the misrepresentations made by Messrs. Betts, Derrow and Howells in the background section of the application, the pleadings properly allege that a misrepresentation occurred when these individuals signed their declarations of inventorship on August 2, 2005[4] and submitted the application.  (Answer, ¶ 62.)  For Messrs. Gibson, Betts and Davison's false declarations, the pleadings allege that this conduct occurred on December 10, 2007 when the declarations were submitted to the PTO.  (Answer, ¶ 66.)

For the material omissions, the date of each publication is included as part of the citation for each reference to establish when it became prior art.  (Answer, ¶ 68.)  Additionally, Navico's pleadings go further and state the dates during which this information was withheld, August 2, 2005 through April 1, 2010.  (Answer, ¶ 70.)  This 4-½ year time period is important because the obligations of candor and good faith are imposed constantly and without exception throughout the patent application process.  37 C.F.R. 1.56(a);[5] *see also, Intel Corp. v. VIA Tech., Inc.*, 176 F. Supp.2d 991, 1000-1001 (N.D. Cal. 2001).   Thus, Navico's pleadings satisfy the "when" requirement for all allegations.  *See Somentics*, 2010 WL 2178836, at *7 (upholding pleadings that alleged when withheld reference was published was sufficient under *Exergen's* "when"

---

[4]"I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application."
[5] "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." 37 CFR § 1.56(a)

- 14 -

requirement); *Reaux Med. Indus., LLC v. Stryker Corp.*, No. 09-CV-1582, 2010 WL 1507656, at *4 (N.D. Tex. Mar. 15, 2010) (holding pleadings alleging when false statements were made satisfies *Exergen's* "when" requirement).

### 4.    Navico's Pleadings Satisfy the "Where" Requirement

*Exergen* requires that the pleading state where in the withheld references the material information is found.  *Exergen,* 575 F.3d at 1329.  For each misrepresentation committed by JOI's employees, Navico quotes the statement that an Examiner would consider material, including the misleading statements in the background section of the patent application and the misleading statements in each of the declarations.  (Answer, ¶¶ 62, 66.)  For each material reference wrongfully withheld by JOI, Navico's pleadings first categorize the references as establishing that sonar towfish can be mounted to a boat, or that side scan sonar systems include boat mounted transducers, and additionally provide a pin-point citation to the relevant information and also state what material information is disclosed in that portion of the reference.  (Answer, ¶ 68.)  Thus, Navico's pleadings satisfy the "where" requirement for all allegations.  *Exergen*, 575 F.3d at 1329; *Somentics*, 2010 WL 2178836, at *6.

### 5.    Navico's Pleadings Satisfy the "Why" and "How" Requirements

*Exergen* requires that the pleadings explain why the withheld information is material and how an Examiner would use the information.  *Exergen,* 575 F.3d at 1329-30. For each of Navico's allegations, the pleadings clearly set out why the towfish prior art is material and how it was actually used by the Examiner.  First, the Navico pleadings summarize the prosecution history discussed above, demonstrating that the towfish/mounted to the boat issue was a constant struggle from the filing of the first

- 15 -

application to the entry of the last amendment.  (*See* Answer, ¶ 63, (quoting the various different claim amendments made by JOI to distinguish the claimed invention from the towfish prior art).)  Second, the pleadings also allege that all of JOI's misrepresentations and omissions were an integral part of the prosecution, representing a concerted effort to side-line the towfish prior art by adding "mounted to the boat" as a limitation to the claims while falsely stating that towfish are not mounted to a boat.  (Answer, ¶¶ 62-65.)  Third, the pleadings quote an Examiner's rejection confirming the importance, and therefore materiality, of the towfish prior art and why it is related to the "mounted to the boat" limitation.  (Answer, ¶ 64.)  Fourth, the materiality of this limitation is clearly established by the fact that the patent was allowed to issue only after the Examiner amended the claims to reinstate the "mounted to the boat" limitation that JOI omitted when it filed its third application.  Thus, Navico's pleadings go beyond mere allegations and establish "why" the Examiner did consider the information material and "how" it was actually used by the Examiner.  *Exergen,* 575 F.3d at 1329-1330; *Kenetic Concepts, Inc. v. Convatec Inc.*, No. 08-CV-918, 2010 WL 1427592, *8 (M.D.N.C. Apr. 8, 2010) (holding pleadings sufficient to meet *Exergen's* "how" requirement, that alleged individuals failed to disclose references that called into question arguments and statements made by applicant regarding the patentability of a particular limitation); *Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Comp.*, No. 07-CV-265, 2010 WL 1781013, *8 (N.D. Ind. May 3, 2010) (finding pleadings sufficient under the "how" requirement where they alleged individuals knew of their duty to disclose and knew of the relevant material in the references); *Somentics*, 2010 WL 2178836, at *6.

- 16 -

JOI offers three arguments that Navico's pleadings do not meet the "how" requirements of *Exergen,* but all three are deficient legally and factually. Legally, JOI is confusing the higher proof standard for a decision on the merits with the lower standard of construing all pleadings in the light most favorable to the pleader. That is a sufficient basis to reject its arguments. Factually, JOI argues that "boat-mounted side scan sonar transducer assemblies were well known in the art and were before and considered by the PTO Examiner." (Pls. Memo, p. 14.) In effect, JOI would have the Court totally ignore the false declarations on the basis that prior art establishing the falsity of the declarations was before the Examiner, who was entitled to reach his own conclusions. (Pls. Memo, p. 21.)

The case law cited by JOI is inapposite and does not stand for the proposition that the patentee can submit prior art that shows one thing (boat mounting of towfish transducers), but consistently and vociferously and wrongly state that the prior art shows something else (towfish are separate from the boat). JOI cites *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007), and *Bayer Schering Pharma AG v. Barr Labs, Inc.*, 2008 U.S. Dist. LEXIS 15917, at *151 (D.N.J. Mar. 3 2008). These cases, however, deal with arguments made and not statements of fact. They are inapposite for two reasons. First, an applicant that submits a false statement in a declaration with the intent of deceiving the PTO commits inequitable conduct, and this cannot be cleansed by any submission of prior art. *eSpeed, Inc. v. BrokerTec USA LLC*, 480 F.3d 1129, 1134-1135 (Fed. Cir. 2007) (holding that submission of false declarations is considered inequitable conduct, even when applicant submits references regarding the same subject matter). Second, Federal Circuit precedent establishes that the submission of false declarations is

inherently material.  *See Somentics*, 2010 WL 2178836, at *8 (holding that allegations alleging the submission of false declarations satisfy the "how" requirement); *see also, Refact Int'l. Ltd.*, 81 F.3d at 1583; *Nilssen*, 504 F.3d at 1233.  Thus, Navico's detailed allegations directed at Messrs. Gibson, Betts and Davison satisfy this requirement on their face.

Second, JOI's reliance on Navico's invalidity contentions is also misplaced.  In the invalidity contentions Navico contends that Mr. Betts admits only that "side scan sonar transducer assemblies were old in the art," and not that mounting these transducers to a boat was well known in the art.  (Pls. Exh. 6, pp. 9-11.)  Any reading of Mr. Betts' declaration will show that his characterization of known towfish and side scan sonar transducers is misleading, at best, especially when compared to the prior art.  Thus, Navico's invalidity contentions are consistent with its pleading.

Third, JOI takes issue with the falsity of the statements made.  This is surprising, however, as the record clearly indicates that the statements are false.  Nevertheless, as noted earlier, Navico is not required to prove all elements of its claim at this stage of the litigation.  Instead, the pleadings are taken as true and the only issue is the sufficiency of the pleadings.  *Xechem Int'l, Inc.*, 382 F.3d at 1326.

In summary, Navico has sufficiently alleged that Messrs. Gibson, Betts and Davison made material false statements, particularly in light of JOI's admissions that: "boat-mounted side scan sonar transducer assemblies were well known in the art"; that "towfish could be mounted to a boat"; and that "side scanning sonar systems included boat mounted transducers."  (Pls. Memo., pp. 14, 17, 19.)  All of Messrs. Gibson, Betts and Davison statements are in direct conflict with each of these submissions, because, for

example, a towfish cannot have an "unknown position and orientation with respect to the boat" if it is also "mounted to a boat." Navico's pleadings satisfy the "why" and "how" requirement.

### 6.    Navico's Pleadings Establish "Scienter"

Rule 9(b) permits the scienter element of an inequitable conduct pleading to be plead generally. Fed.R.Civ.P. 9(b); *see also Exergen*, 575 F.3d at 1327. Additionally, courts allow the scienter requirement to be plead on information and belief if the pleading sets forth specific facts upon which the belief is reasonably based. *Id.* at 1330. Here, Navico has sufficiently plead facts for each of the allegations.

### a.    The Pleadings Establish JOI's Representatives Had "Knowledge"

The pleadings state that JOI's representatives knew their statements were false and knew of the material prior art. (Answer, ¶¶ 66-68.) This knowledge is imputed to these individuals based on the specific facts of their extensive industry experience, the widespread availability of the information, the specific details they provided regarding towfish and side scan sonar systems, and their express statements. (*See,* Section II.A, *supra.*) Each of the three declarants had at least 12 years of experience in the sonar field, with a cumulative total of 47 years, yet they made statements that directly contradicted well established knowledge that "towfish could be mounted to a boat, that side scanning sonar systems included boat mounted transducers, that side scanning sonar systems included down looking sonar, that towfish can be operated in shallow water, that towfish can have a fixed and known position with respect to the boat, that towfish are small enough to be mounted to a boat, that the transducer elements (including those on towfish) are small enough to be mounted on a boat, and that towfish can operate at a constant

depth." (Answer, ¶¶ 67, also ¶¶ 66, 68.)  Further, these individuals withheld information in articles and other materials that "established that towfish could be mounted to a boat, that side scanning sonar systems included boat mounted transducers, and that side scanning sonar systems included down scanning sonar."  (Answer, ¶ 68, also ¶¶ 66, 70.)  Moreover, the information establishing the falsity of JOI's misrepresentations was in no less than twelve widely published articles and other materials.  (Answer, ¶ 68.)  Thus, Navico's pleadings aver specific facts sufficient under Rule 9(b) to infer that these individuals had the requisite knowledge.  *See Aerocrine AB v. Apieron Inc.*, No. 08-CV-787, 2010 WL 1225090, at *10 (D. Del. Mar. 30, 2010) (finding pleadings sufficient to infer individuals knew of material references where the pleadings established facts that the individuals had an opportunity to know of the references).

Amazingly, JOI admits that information establishing the falsity of these statements was well known through out the industry.  JOI states "boat-mounted side scan sonar transducer assemblies were well known in the art."  (Pls. Memo, pp. 14.)  This admission directly conflicts with the statements made by Messrs. Gibson, Betts and Davison in their declarations and with the statements made in the background section of the patent.  (*See,* Section II.A, *supra*.)  JOI cannot credibly argue that this information was well known in the sonar field at the time of the invention, but somehow unknown to their employees having decades of experience in the sonar field.

### b. The Pleadings Establish JOI's Representatives Had "Intent to Deceive"

Navico's pleadings establish that the misrepresentations and omissions by JOI's representatives were made with deceptive intent.  The "mounted to the boat" limitation and its relationship with the "towfish" prior art was critical to the issuance of the '952

patent.  It was the subject of five substantive rejections and six amendments over five

years, and it was highlighted by the Examiner on multiple occasions.  For example, on

December 4, 2007, Mr. Betts and other JOI representatives attended an Examiner

interview where they personally argued that the "attached to the boat" limitation is what

was patentable in this application.  (Def. Exh. 5.)  Immediately after this interview,

Messrs. Gibson, Betts and Davison submitted their declarations emphasizing their sonar

expertise, knowledge, and experience, and further emphasizing that towfish are not

mounted to the boat.  (Answer ¶¶ 62, 65-68.)  This was not an accident or coincidence; it

was intended to sway the Examiner.  Thus, the only reasonable inference to draw from

someone both knowingly misrepresenting and withholding material information from the

PTO is that this was done with the intent to deceive.  *eSpeed, Inc.*, 480 F.3d at 1138 (Fed.

Cir. 2007); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1188 (Fed.

Cir. 1993); *see also Correct Craft*, 2010 WL 598693, at *6 (holding that pleadings

establishing a declarant knowingly submitted false declarations is sufficient to infer

deceptive intent); *Somentics*, 2010 WL 2178836, at *8.

      **C.**     **JOI Fails to Establish that Navico's Withholding
Pleadings are Insufficient**

      JOI presents three arguments for dismissal of the pleadings relating to the

withholding of material prior art.  Each is addressed below.

          **1.**     **Navico's Withholding Pleadings Satisfy the
"What" and "Where" Requirements**

      JOI first argues that Navico's withholding pleadings fail to meet the "what"

requirement of *Exergen* because Navico's pleadings do not specify which references

were withheld.  (Pls. Memo., p. 15.)  JOI cites *Cent. Admixture Pharmacy Servs., Inc. v.

Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356-57 (Fed. Cir. 2007), as requiring

a party to specifically identify the prior art withheld.  Navico satisfies the "what" requirement by listing twelve references, categorizing them, and providing full citations and pin-point cites.  (Pls. Memo, pp. 14, 22; Answer ¶¶ 68, 70.)  This satisfies the "what" and "where" requirements of *Exergen*.  (*Supra*, §§ III.B. 2 & 4.)

## 2.   Navico's Withholding Pleadings Properly Establish JOI's Representatives Knew of the Withheld References

JOI next argues that Navico's withholding pleadings fail because they do not plead sufficient facts to permit an inference that Messrs. Gibson, Betts, Davison, Derrow and Howells knew of these references and withheld them in order to deceive the PTO. (Pls. Memo, p. 15-17.)  JOI attacks this aspect of the pleadings on three grounds.

First, JOI claims that wrongdoing is not the "single most reasonable inference" that can be drawn from the pleadings.  (Pls. Memo, p. 16.)  But, JOI conspicuously fails to present a more reasonable inference, or any factual basis to infer otherwise.  Indeed, Navico submits that no inference is needed because the statements are so blatantly untrue and the references so material to the Examiner's inquiry that there is no other inference to be drawn.  As discussed above, "mounted to the boat" was a key limitation in the claims, it was the pervasive issue during prosecution, it was highlighted multiple times by the Examiner, and it was essential to JOI obtaining a patent.  This information was known to at least Mr. Betts, who attended the interview where this limitation was claimed by JOI to be the point of novelty.  Finally, the information withheld by these individuals was targeted at this claim limitation and established that this claim limitation was not patentably distinct over the prior art.  Thus, the only reasonable inference is that this information was wrongfully withheld and misrepresented.

- 22 -

JOI also cites *Herengracht Group LLC v. W.M. Wrigley Jr. Co*, 10-CV-21784, Slip. Op. at 9 (S.D. Fla., Sept. 17, 2010) (Pls. Exh. 7), as establishing that a "party's sophistication and its decades of experience in the relevant matters are not sufficient to infer the requisite intent to deceive." (Pls. Memo, p. 16.) *Harengracht* is inapposite because it only holds that mere passive knowledge is insufficient to establish deceptive intent. *Herengracht Group*, 10-CV-21784, Slip. Op. at 9-11. The present facts are markedly different because of the intentional withholding of material prior art and the active submission of false statements about the key issue blocking the issuance of a patent. As noted in the preceding paragraph, deceptive intent is the only reasonable inference that can be drawn from the detailed facts plead in the Answer, ¶¶ 62-65, 67-69.

Finally, JOI points to Navico's response to certain interrogatories, asserting that because only one employee of Navico knew of all of these references during the time period in question, it is a major inferential leap for this court to find that any JOI employees could have known of these references. (Pls. Memo, p. 16.) This argument ignores the full interrogatory response, stating that at least four other Navico employees were aware of many of the withheld references and also had additional knowledge of side scan sonar systems, as would be expected of people with many years of experience in this field. (Pls. Exh. 8.) Thus it is very likely that people in a similar position at JOI would also be aware of the same widely published materials, especially since JOI has admitted that boat mounted side scan transducers were well known in the art. This satisfies the requirements of pleading sufficient facts upon which to base a belief that JOI had the requisite knowledge of the prior art and intended to deceive the PTO by withholding it. *Exergen*, 575 F.3d at 1327, 1330. (*See infra*, § III.B.6.)

- 23 -

**D.    JOI's Inequitable Conduct in the Prosecution of the '952 Patent
Renders Unenforceable the '825, '203 and the '974 Patents**

Navico's pleadings sufficiently allege the unenforceability of all four patents

asserted by JOI.  Specifically, all four patent applications are related, all arise from a

single application, all share a common specification, and all are expressly identified as

related applications.  All claim the same subject matter, and all were the subject of the

same material misrepresentations and prior art withholdings.  (Answer, ¶ 71.)  JOI does

not even attempt to rebut these facts.  (Pls. Memo, p. 26.)  This close and inextricable

linkage, coupled with satisfaction of the specific who, what, when, where and how

requirements, is sufficient to invalidate all four patents because the inequitable conduct in

the prosecution of one patent will render unenforceable a related patent if the conduct is

"immediately and necessarily" related to the related patent.  *See Semiconductor Energy

Lab. Co., LTD v. Samsung Elec. Co., LTD*, No. 09-CV-01, 2010 WL 55847, at *10 (W.D.

Wis. Jan. 5, 2010) (holding related patent unenforceable as a result of inequitable conduct

in another patent because the inequitable conduct was directed to a limitation present in

both patents); *see also Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir.

2006).  JOI does not cite any authority, and relies only on its discredited immateriality

argument.  Thus Navico's pleadings are sufficient to establish all four patents are invalid

due to JOI's inequitable conduct

**E.    Navico's Pleadings Should Not be Dismissed with Prejudice**

In support of JOI's motion to dismiss with prejudice, it offers only two arguments

– that the misrepresentations and withholdings are not material, and that there is no basis

to infer the necessary intent to deceive.  (Pls. Memo, p. 26-27.)  Navico submits that by

comparing the statements made (*supra*, § II.A) to the withheld prior art (*supra,* § II.B),

the falsity of the statements and the materiality of the prior art become crystal clear.  The materiality of the withheld and misrepresented information is confirmed by the Examiner's statements (*supra*, § II.A), and the intent to deceive is demonstrated by the admitted awareness of the prior art (Pls. Memo, p 14) and the falsity of the declarations.  Thus, after reviewing the allegations in the light most favorable to Navico, they amply cover the who, what, when, where and how requirements, and establish multiple grounds for ruling that JOI violated, multiple times, the obligation of candor and good faith imposed on all patent applicants.

Moreover, the authority cited favors Navico, and JOI fails to cite any basis or authority for dismissal with prejudice.  A motion to dismiss does not test the merits of a pleading, but rather the sufficiency of its allegations.  *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).  All allegations must be taken as true and viewed in the light most favorable to the pleader.  *See Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  Only if it then appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations," should a court dismiss the pleading for failure to state a claim.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Under this liberal standard, especially when compared to the detail of Navico's pleadings, JOI's motion should be denied.

## IV.    CONCLUSION

Based upon the who, what, where, when and how detailed in the pleadings, Navico respectfully requests the Court deny JOI's Motion to Strike Certain Defenses and Counterclaims.

Dated:  November 2, 2010                    Respectfully submitted,


                                                 /s/Michael D. McCoy
                                            Michael D. McCoy
                                            NC Bar No. 11192
                                            Kirk Bradley
                                            NC Bar No. 26490
                                            David M. Alban
                                            NC Bar No. 40299
                                            ALSTON & BIRD LLP
                                            Bank of America Plaza
                                            101 South Tryon Street, Suite 4000
                                            Charlotte, North Carolina  28280-4000
                                            (704) 444-1000 – Telephone
                                            (704) 444-1111 – Facsimile

                                            Richard Gill
                                            C. Nelson Gill
                                            COPELAND FRANCO
                                            444 South Perry Street
                                            Montgomery, Alabama  36104
                                            (334) 834-1180 – Telephone
                                            (334) 834-3172 – Facsimile

                                            Attorneys for Defendant
                                            NAVICO, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd  day of November, 2010, a true and correct copy of

DEFENDANT NAVICO, INC.'S OPPOSTION TO PLAINTIFFS' MOTION TO

STRIKE CERTAIN DEFENSES AND COUNTERCLAIMS, AND TO DISMISS THEM

WITH PREJUDICE was filed electronically with the Clerk of Court using the Court's

CM/ECF system, to be served by operations of the Court's electronic filing system upon

the following counsel of record:

| | |
|---|---|
| David R. Boyd<br>Balch & Bingham - MGM<br>PO Box 78<br>Montgomery , AL 36101-0078<br>334-269-3132<br>Fax: 334-269-3115<br>Email: dboyd@balch.com<br><br>Griffin Lane Knight<br>Balch & Bingham<br>105 Tallapoosa Street, Suite 200<br>Montgomery , AL 36104<br>334-834-6500<br>Fax: 334-269-3115<br>Email: lknight@balch.com | Dara M. Kurlancheek<br>Fitzpatrick Cella Harper & Scinto<br>1290 Avenue of the Americas<br>New York , NY 10104<br>212-218-2100<br>Fax: 212-218-2200<br>Email: dkurlancheek@fchs.com<br><br>Douglas Sharrott<br>Fitzpatrick, Cella, Harper & Scinto<br>1290 Avenue of the Americas<br>New York , NY 10104<br>212-218-2208<br>Fax: 212-218-2200<br>Email: dsharrott@fchs.com<br><br>Edward Elmo Vassallo<br>Fitzpatrick, Cella, Harper & Scinto<br>1290 Avenue of the Americas<br>New York , NY 10104<br>212-218-2241<br>Fax: 212-218-2200<br>Email: evassallo@fchs.com |

Dated:  November 2, 2010                                    _____/s/Michael D. McCoy_____

- 27 -